UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TONIA JEWELL, ET AL.                                                              Plaintiff

v.                                                        Civil Action No. 3:23-cv-78-RGJ

MAGNOLIA BANK, INC                                         Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Magnolia Bank, Inc. ("Magnolia") moves to dismiss Plaintiff Tonia Jewell's ("Jewell") class action Complaint against it. [DE 24]. Magnolia also moves to strike Jewell's class allegations. [DE 25]. Responses and replies were filed to both motions. [DE 26; DE 29; DE 27; DE 30]. These matters are ripe for adjudication. For the reasons below, Magnolia's Motion to Dismiss [DE 24] is **DENIED** and Magnolia's Motion to Strike Class Allegations [DE 25] is **DENIED**.

**I.**     **BACKGROUND**

The Amended Complaint alleges that Jewell and a proposed class[1] of similarly situated Plaintiffs are registered on the national do-not-call registry but received telemarketing calls from Magnolia or a third-party telemarketing agency, Rasani, on behalf of Magnolia. [*See* DE 23 at 87-90 ¶¶ 6-21]. On November 10, 2022, Jewell alleges that she received a phone call from the number (301) 381-4665 marketing home mortgage refinancing services on behalf of Magnolia. [DE 23 at 88 ¶¶9-11]. Jewell received a phone call the next day from the number (626) 591-2985 also marketing home mortgage refinancing services on behalf of Magnolia. [*Id*. at ¶12-13]. During this call, Jewell was transferred to Anthony Beck ("Beck"), a "representative of Magnolia" who

---

[1] Jewell has not yet filed a motion for class certification.

1

marketed home mortgage refinancing services on behalf of Magnolia. [*Id.* ¶ 13]. Jewell alleges that these phone calls were initiated by Rasani employees "Phil" and "Leo," respectively. [*Id.* ¶¶11-13]. Jewell received two more calls that she did not answer from the number (317) 743-0573, which Jewell alleges were from Beck. [DE 88-89 ¶¶14-16].

Jewell filed this action on February 20, 2023, pleading direct and vicarious liability theories against Magnolia for claims of negligent and knowing/willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). [DE 1]. Magnolia moved to dismiss for failure to state a claim [DE 18] and to strike class allegations. [DE 19]. On May 19, 2023, Jewell filed an Amended Complaint, adding a theory of vicarious liability and denying that she consented to any of the phone calls. [DE 23]. Magnolia again moves to dismiss, arguing Jewell has failed to sufficiently allege (1) Magnolia made a telephone solicitation or that the calls were made for a marketing purpose, or (2) Magnolia is liable for Rasani's conduct under theories of actual authority, apparent authority, or ratification. [DE 24 at 97-98]. Magnolia also moves to strike Jewell's class allegations, arguing that Jewell's current proposed class cannot be certified and cannot be cured in discovery. [DE 25 at 114].

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court

2

need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

### III.  DISCUSSION

**1. Magnolia's Motion to Dismiss**

The TCPA prohibits a person from: (1) "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party"; or (2) making live calls to residential telephone numbers that have been placed on the national do-not-call registry. *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (citing 47 U.S.C. § 227 et seq.). In *In re Dish Network*, *LLC*, the FCC explained that a "telemarketer" is "the person or entity that initiates a [telemarketing] call," i.e., "takes the steps necessary to physically place a telephone call, and generally does not include persons or entities . . . that might merely have some

role, however minor, in the causal chain that results in the making of a telephone call." 28 FCC Rcd.6574, 6583, ¶26 (2013). Even so, the FCC clarified that inclusion of the phrase "on behalf of" in § 227(c)(5), which creates a private right of action to challenge multiple live calls, allowed for a "seller" to be held vicariously liable under traditional agency tenets, including "not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 FCC Rcd. at 6584.

Jewell's claims are based on two sets of phone calls: those she alleges were made by Beck that Magnolia is directly liable for, [DE 23 at 89 ¶¶16-17], and those made by Rasani employees that Magnolia is vicariously liable for. [DE 23 at 88-89 ¶¶9-15, 18].

### a. Direct Liability

Magnolia moves to dismiss the claims based on the first set of calls claiming that Jewell has not plausibly alleged that (1) a telephone solicitation was made; or (2) that the telephone calls allegedly made by Beck from the (317) 743-0573 number were made for a marketing purpose. [DE 24 at 97].

The implementing regulations for the TCPA define a telephone solicitation as "the initiation of a telephone call or message," made for the purpose "of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(15). The regulations exclude a call or message "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15)(ii). Whether an established business relationship exists is an affirmative defense not appropriately decided at the pleading stage. *See e.g.*, *Bridging Communities v. Top Flite Finan. Inc.,* 843 F.3d 1119, 1125 (6th Cir. 2016) (noting the "possibility of consent to receive faxes and/or prior existing business relationships as a defense to liability under the TCPA."); *Hodgin v. Parker Waichman Llp,* No. 3:14-CV-733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (in a TCPA action,

defendant bears the burden of proving the "affirmative defense" that a plaintiff "consented to receiving phone calls.")

Because the TCPA can be violated merely upon the initiation of a call for a prohibited purpose, "the relevant question is a Defendant's *purpose* in initiating the calls, not what *occurred* on each call." *Bennett v. GoDaddy.com LLC,* No. CV-16-03908-PHX-ROS, 2019 WL 1552911, at *8 (D. Ariz. Apr. 8, 2019). Where "the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services," the TCPA has been violated, even if the call was not answered. *Id.* (citing *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 816 (8th Cir. 2015). As noted by the Ninth Circuit in approaching a similar issue under the TCPA, courts should "approach the problem" of determining why calls were made "with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

Jewell alleges that she received a phone call and was "transferred to Anthony Beck, a representative of Magnolia Bank who continued marketing home mortgage refinancing services on behalf of Defendant," [DE 23 at 88 ¶13], was given a callback number for Beck at (317) 743-0573, [*Id*. at 89 ¶ 14], and "received two more calls from the number (317) 743-0573." [*Id*. ¶ 16]. Even though Jewell did not answer the two later phone calls, the context of those calls—allegedly made from Beck's number after he marketed home mortgage refinancing services to Jewell— suggest that they were "initiated and transmitted to a person for the purpose of promoting property, goods, or services." Presuming all factual allegations in the complaint to be true and making all reasonable inferences in favor of Jewell, these allegations plausibly allege that Magnolia made a telephone solicitation and that the calls were made for a marketing purpose.

Magnolia argues that the definition of telephone solicitation requires Jewell to allege facts that the calls were made without an inquiry—to allege that there was no established business

5

relationship "on the basis of the subscriber's inquiry or application regarding products or services offered by the entity." 47 C.F.R. § 64.1200(f)(5); [DE 29 at 162]. Magnolia maintains that Jewell has not plausibly alleged that a telephone solicitation was made because "[c]ritically, Plaintiff never alleges she told Magnolia Bank she was disinterested in its products or affirmatively asked it *not* to call her back. So the only facts alleged in the FAC suggest an inquiry *did* take place and not vice versa." [2] [DE 24 at 109]. Yet neither the TCPA nor FRCP 12(b)(6) require these specific allegations. And as noted above, that a plaintiff consented to receiving phone calls through an inquiry is an affirmative defense, not an element of the claim.[3] As a result, the Court **DENIES** Magnolia's motion to dismiss as to Jewell's direct liability claims for the calls made from the -0573 number.

   b. **Vicarious Liability**

Jewell's other claims are based on calls made by employees of a third-party telemarketing agency, Rasani, that she alleges Magnolia is vicariously liable. [DE 23 at 88-89 ¶¶9-15, 18]. Magnolia moves to dismiss these claims alleging that the Amended Complaint insufficiently alleges vicarious liability under theories of actual authority, apparent authority, or ratification. [DE 24 at 102].

   i.   *Actual and Apparent Authority*

"[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's

---

[2] This is a logical fallacy known as "denying the antecedent," concisely refuted because "'If P then Q' does not mean 'If Not P then Not Q.'" *New England Power Generators Ass'n v. F.E.R.C.*, 707 F.3d 364, 370 (D.C. Cir. 2013).

[3] And in any event, Jewell alleges that she had "no transaction nor submitted any inquiry to Defendant within the eighteen (18) months preceding the calls at issue in this Complaint. She has never consented in writing, or otherwise, to receive telemarketing calls from Defendant." [DE 23 at 90 ¶19].

manifestations to the agent, that the principal wishes the agent so to act." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373 (6th Cir. 2015). A party may be held liable for the conduct of a third-party under a theory of actual authority where "(a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *In re Dish Network,* 28 F.C.C. Rcd. at 6586 (2013). Actual authority may be express or implied. *See Bergin Fin., Inc. v. First Am. Title Co.*, 397 Fed. App'x 119, 124 (6th Cir. 2010). "Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Deschamps v. Bridgestone Ams., Inc. Salaried Employees Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016) (citing *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 150 F.3d 590, 593 (6th Cir. 1998)).

Other district courts have found implied authority plausibly alleged under similar facts to this case. *See e.g.*, *Cunningham v. Rapid Response Monitoring Servs., Inc.,* 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) (dismissing claim based on apparent authority, but finding implied authority plausibly alleged where plaintiff "has alleged an unlawful telemarketing scheme the end result of which was the generation of business for [defendant], and he has alleged that [defendant] was an active participant in that scheme."); *Landy v. Nat. Power Sources, LLC*, No. 3:21-00425, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022) (*Landy II*) (finding that where plaintiff specifically alleged that the initial contact was made to market defendant's products, "an agency relationship [could] be inferred from . . . the smooth transfer from the initial [automatic telephone dialing system] contact to the defendant's live agents. . . [and defendant's] accepting the call and following up with an email after the call").

7

Like the plaintiff in *Landy II*, Jewell has alleged that Rasani "held themselves out as persons authorized to market Defendant's services." [DE 23 at 89 ¶18]. Jewell alleges that she was transferred from the initial call to one of Magnolia's employees, who accepted the call and later called twice more. [DE 23 at 88-89, ¶¶13-16]. These facts, taken as true and making all reasonable inferences in favor of Jewell, plausibly allege implied authority. As a result, the Court **DENIES** Magnolia's motion to dismiss to the extent that Jewell's claim relies on a theory of implied actual authority.

Because the claim moves forward on a theory of implied actual authority, the Court need not reach the argument of whether Jewell has plausibly alleged apparent authority. Jewell's Amended Complaint alleges statements made by Rasani that it "held themselves out as persons authorized to market Defendant's services," [DE 23 at 89 ¶18], but alleges no specific statements by *Magnolia* that held Rasani out as its agent. "The apparent power of an agent is to be determined by the act of the *principal* and not by the acts of the *agent*[.]" *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 663 (6th Cir. 2005) (emphasis added). At this stage of the litigation, it is a close call as to whether this theory is fully alleged.

### ii.     Ratification

"[R]atification occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions. *Lucas*, 2019 WL 3021233, at *5 (citing *Sphere Drake Ins. v. Am. Gen. Life Ins.*, 376 F.3d 664, 677 (7th Cir. 2004)). "A principal can ratify an act by 'manifesting assent that the act shall affect the person's legal relations,' or by 'conduct that justifies a reasonable assumption that the person so consents.'" *Eldridge v. Cabela's Inc.*, No. 3:16-cv-536, 2017 WL 4364205, at *6 (W.D. Ky. Sept. 29, 2017) (quoting Restatement (Third) of Agency § 4.01(2)). "A person may ratify an act if the actor acted or purported to act as an agent on the person's behalf." Restatement § 4.03. Because Jewell has plausibly alleged Rasani acted with implied authority as

an agent on Magnolia's behalf, "it [would be] similarly premature to draw any conclusion about ratification." *Cunningham*, 251 F. Supp. 3d 1187 at 1199. As a result, the Court **DENIES** Magnolia's motion to dismiss Jewell's vicarious liability claim insofar as it relies on a theory of ratification.

### 2. Magnolia's Motion to Strike

Magnolia also moves to strike Jewell's class allegations under Federal Rule of Civil Procedure 12(f). [DE 25]. Magnolia argues Jewell's class allegations could never be certified because (1) the proposed class is overly broad and lacks commonality; (2) the class is not defined objectively; (3) the class definition is vague; and (4) Jewell does not meet the class definition. [*Id*. at 113-114].

Though procedurally permissible, striking a plaintiff's class allegations before discovery and a motion for class certification is a rare remedy. *See Weathers v. Peters Realty Corp*., 499 F.2d 1197, 1200 (6th Cir. 1974); *see also Chen-Oster v. Goldman, Sachs & Co*., 877 Fed. Supp. 2d 113, 117 (S.D.N.Y. 2012) (noting that, generally, "motions of this kind are deemed procedurally premature"). The moving party has the burden of establishing from the face of the complaint that "it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]." *Schilling v. Kenton Cnty*., No. 10-143-DLB, 2011 WL 293759, at *4, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. Jan. 27, 2011) (citations omitted); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed. 2018) ("[C]lass allegations [are] stricken prior to a motion for certification only when class certification is a clear impossibility."). In other words, a court should strike class allegations only if "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23." *Bearden v. Honeywell Int'l, Inc*., 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010). The Sixth Circuit has stated

9

that a district court should usually "defer decision on class certification issues and allow discovery 'if the existing record is inadequate for resolving the relevant issues.'" *Bearden,* 720 F. Supp. 2d 932 at 942.

### a. Overbreadth and Commonality

A proposed class definition may be overly broad if "it would include members who have not suffered harm at the hands of the Defendant and are not at risk to suffer such harm." *Brashear v. Perry Cnty., Ky.*, No. CIV.A. 6:06-143-DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007). Jewell defines the proposed class as:

> All persons in the United States whose numbers are listed on the national do-not-call registry, and received two or more telemarketing calls within any 12-month period from Defendant or its agents to their residential telephone number 31 or more days after the telephone number was listed on the national do-not-call registry at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated (the "Class Period")

[DE 23 at 88-89 ¶23].

Magnolia contends that the proposed class is overly broad because "it includes individuals who either consented to be contacted by Magnolia Bank or had an established business relationship with Magnolia Bank," [DE 25 at 119], and lacks commonality because some class members will lack a valid claim for the same reasons. [*Id.* at 120]. Yet including only individuals who did not expressly consent to the receipt of the defendant's phone calls is the definition of an impermissible fail-safe class—"one that includes only those who are entitled to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). *See, e.g.*, *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 625–26 (E.D. Pa. 2015) ("Both classes Zarichny defined are fail-safe classes.") ("The putative TCPA class is comprised of those people who received CPRS telephone calls without the recipient's 'prior express consent[.]' . . . [T]here is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should

10

avoid."); *Sauter v. CVS Pharm., Inc.,* No. 2:13-cv-846, 2014 WL 1814076, at *8–9 (S.D. Ohio May 7, 2014) ("Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS.") ("In other words, 'the proposed class[es] consist[ ] solely of persons who can establish that defendant violated the TCPA.' "); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015) (finding the proposed classes were fail-safe because they only "consist of those people who did not provide prior express consent to be contacted by defendants, and therefore can establish a violation of the TCPA"). The proposed members of the class will have received a telemarketing call—and thus have a claim—but might not be entitled to relief due to the affirmative defense of an established business relationship or their consent to the calls. As a result, Jewell's proposed class is neither overly broad in that it would include members who do not have a claim, nor does it only include those who are entitled to relief.

To demonstrate commonality, the proposed member's "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young,* 693 F.3d 532 at 542 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). While Magnolia's consent/established business relationship defense may apply to some members of the class and not others, the plaintiffs' claims will still "depend on a common contention . . . of such a nature that it is capable of classwide resolution." *Young*, 693 F.3d 532 at 542; *See Bridging Communities*, 843 F.3d at 1126 ("Even where defendants point to some evidence that a defense will indeed apply to some class members . . . courts routinely grant certification because Rule 23(b)(3) requires merely

11

that common issues predominate, not that all issues be common to the class.") (internal quotations omitted). As a result, Jewell's proposed class definition does not lack commonality.

### b. Objective Definition

"A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class." *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (citing 5 James W. Moore et al., Moore's Federal Practice ¶ 23.21[3][c] (3d ed. 2007)). Magnolia argues that the proposed class cannot be defined objectively and is therefore a fail-safe class requiring an individual merits evaluation for each member. [DE 25 at 121-122].

A fail-safe class is "one that includes *only* those who are *entitled* to relief." *Hodgin v. Parker Waichman Llp*, No. 3:14-CV-733-DJH, 2015 WL 13022289, at *4 (W.D. Ky. Sept. 30, 2015). A class definition that requires the proposed members of the class to be able to *pursue* a claim for relief is different from requiring them to be *entitled* to relief, as federal courts do not have "the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021). Magnolia "could establish that the violation was the result of error, that it obtained the subscriber's prior express permission, or that there was an [established business relationship]." *Hodgin*, 2015 WL 13022289, at *4. Again, the proposed class is not fail-safe. Moreover, the class can be defined before the case is resolved on its merits. "If an individual received a telephone solicitation from [defendants] and her phone number was registered on the national do-not-call registry, then they can join the class. There is no need for this case to be resolved on the merits beforehand." *Id*. So too here. Jewell's proposed class definition does not require an individual merits evaluation and can be defined objectively.

### c. Vagueness

"Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *Young,* 693 F.3d 532 at 538 (6th Cir. 2012). Magnolia argues that the phrase "Defendant **or its agents**" in the proposed class definition is too vague and ambiguous because it "may be intended to refer to employees of Magnolia Bank or third-parties making calls on Magnolia Bank's behalf or both." [DE 25 at 124].

The Amended Complaint alleges both direct liability for actions taken by a Magnolia Bank employee, [DE 23 at 89 ¶17], and vicarious liability based on the phone calls made by Rasani on Magnolia's behalf. [*Id.* ¶18]. Magnolia accuses Jewell of pulling a "bait and switch" because Jewell's class definition refers to "*agents*—plural" but the Amended Complaint "does not allege that Rasani is the *only* agent whose calls are at issue." [DE 30 at 183]. Magnolia argues that until Jewell amends the proposed definition to include only calls by Rasani, it "refers only vaguely to 'agents' without any content or limitation—[and] is uncertifiably [sic] vague." [DE 30 at 184]. Yet Jewell's Amended Complaint identifies only two sets of calls at issue; one set that were made by Magnolia directly and the other by its alleged agent, Rasani. [*See* DE 23 at 89 ¶¶16-17]; [*Id*. at 88-89 ¶¶9-15, 18]. While the phrase "Defendant or its agents" could refer to employees of Magnolia Bank or third parties making calls on Magnolia Bank's behalf, that is not vagueness—it recognizes a distinction between claims brought under a theory of direct liability or vicarious liability; or indeed, both. Jewell's class is definition is not too vague to be uncertifiable.

### d. Representative of the Class

Named plaintiffs "must also be members of the proposed 'class'" in order to "adequately protect the interest of the proposed class members." *Gevedon v. Purdue Pharma,* 212 F.R.D. 333,

13

337 (E.D. Ky. 2002); *See* Fed. R. Civ. P. 23(a)(4). Magnolia argues that Jewell is not representative of the class because her injury "is different from those of the proposed class members." [DE 25 at 122]. Magnolia argues that Jewell does not meet the class definition because Jewell "did not answer the calls" from Magnolia Bank and so she cannot assert they were telemarketing calls," [DE 30 at 183], and maintains that Magnolia cannot be held vicariously liable for the calls Rasani made. Yet, as outlined above, Jewell's direct liability claim is plausibly alleged, in part because a plaintiff need not answer calls to assert that they were telemarketing calls. Moreover, Jewell also plausibly alleged vicarious liability for Rasani's calls. As a result, Jewell meets the proposed class definition.

It is Magnolia's burden to establish from the face of the complaint that "it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]." *Schilling v. Kenton Cnty.*, No. 10-143-DLB, 2011 WL 293759, at *4, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. Jan. 27, 2011). Magnolia has failed to meet that burden. To be clear, the Court is not making a conditional certification of Jewell's proposed class. But in analyzing Magnolia's motion to strike, Jewell's proposed class definition is (1) not overly broad; (2) does not lack commonality; (3) is not vague, (4) does not lack an objective definition; and (5); Jewell is representative of the class. As a result, the Court **DENIES** Magnolia's motion to strike class allegations.

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Magnolia's Motion to Dismiss [DE 24] is **DENIED**: Magnolia's Motion to Dismiss as to Jewell's claim for direct liability is **DENIED**. To the extent that Jewell's claims for vicarious

14

liability rely on a theory of implied actual authority or ratification, Magnolia's Motion to Dismiss is **DENIED**. To the extent that Jewell's vicarious liability claim relies on a theory of apparent authority, Magnolia's Motion to Dismiss is **DENIED**.

    (2)    Magnolia's Motion to Strike Class Allegations [DE 25] is **DENIED**.

    (3)    Magnolia's first Motion to Dismiss [DE 18] and first Motion to Strike Class Allegations [DE 19] are **DENIED as MOOT**.

    (4)    The Court will refer the case for Rule 16 conference with the Magistrate Judge by separate order.

*Rebecca Grady Jennings, District Judge*
United States District Court

January 17, 2024